IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WILLIAMS, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| R. IRWIN, et al., : | | NO.  22-4140 |
| | : | |
| Respondents. | | |

## RESPONSE WAIVING EXHAUSTION AND AGREEING TO AN EVIDENTIARY HEARING

Petitioner, James Williams, is a Pennsylvania state prisoner serving a mandatory life sentence for first-degree murder in Philadelphia. Before this Court are his *pro se* petition for a writ of habeas corpus (ECF 1) and his counseled amended petition for a writ of habeas corpus (ECF 18).

After careful review of the record, Respondents conclude that Williams is entitled to a federal evidentiary hearing on his claim that the Commonwealth violated *Brady* by failing to turn over a witness statement identifying someone else as the shooter in this case.  Williams has proffered sufficient evidence to demonstrate that an evidentiary hearing would potentially establish the merit of his claim. And a hearing on this claim is not foreclosed by 28 U.S.C. § 2254(e)(2) and the Supreme Court's recent decision in *Shinn v. Ramirez,* 142 S.Ct. 1718, 1735 (2022), because Williams was hampered in

state court by Respondents' failure to turn over evidence supporting his *Brady* claim. He nonetheless diligently sought a hearing in state court on a related claim without the benefit of that *Brady* material. Therefore, Williams cannot be deemed at fault for the lack of factual development of his claim. Respondents respectfully request that after the evidentiary hearing, they be permitted to respond to the substance of Petitioner's claim.

## FACTS AND PROCEDURAL HISTORY

### A. Factual Summary

Nathanial Nazario was shot and killed around midnight on August 4, 2009 in South Philadelphia as he was walking away from an argument with Williams and Markeem Wilson. N.T. 11/1/12 at 249, 265–67. The Commonwealth's theory at trial was that Williams shot Nazario in retaliation for saying negative things about him in the neighborhood. *See, e.g.*, N.T. 11/2/12 at 103; 11/5/12 at 33; 11/7/12 at 72.

Earlier that day, Nazario and his friend, Jennifer Colon, had driven to Nazario's mother's house in South Philadelphia. N.T. 11/5/12 at 6–8. When they arrived, Colon spoke with Nazario's sister, Lizette Nazario, outside by the car. N.T. 11/2/12 at 97–100; 11/5/12 at 8–9. In the meantime, Wilson, who lived in the neighborhood, walked up and started speaking with Nazario nearby on the sidewalk. N.T. 11/2/12, 95, 99–102. The two women heard

2

Nazario arguing with Wilson, but could not tell what the disagreement was about. N.T. 11/2/12 at 102–05; 11/5/12 at 8–11. After this interaction, Nazario left with Colon and drove around the corner to pick up his friend Kelcey Little. N.T. 11/1/12 at 245–46; 11/2/12 at 105; 11/5/12 at 12–13.

A few minutes later, Nazario, Colon, and Little returned to Wilson's house. N.T. 11/1/12 at 247–49; 11/5/12 at 12–14. Nazario and Little got out of the car and walked up to Wilson, who was standing outside with Williams, while Colon remained in the car. N.T. 11/5/12 at 14–15. Nazario began arguing with Wilson and Williams. N.T. 11/5/12 at 16. As the argument escalated, Colon got out of the car and indicated to Nazario that she wanted to leave. N.T. 11/5/12 at 15–16. When Nazario turned around and started walking back to his car, he was shot in the back multiple times and killed. N.T. 11/1/12 at 250; 11/2/12 at 63–76; 11/5/12 at 16–17. Little and Colon fled on foot when they heard the gunshots. N.T. 11/1/12 at 250–52; 11/5/12 at 15, 17–19.

    B.  **Petitioner's Mistrial and Retrial**

Williams was initially tried by a jury in March of 2012. After two days of deliberations, the jury remained deadlocked. N.T. 3/26/12, at 20–22. The court granted Williams's motion for a mistrial. N.T. 3/26/12, at 24.

At Williams's retrial in October of 2012, the Commonwealth presented two primary lay witnesses, Kelcey Little and Jennifer Colon, to testify about what had happened in the lead up to the shooting, neither of whom testified that they saw Williams shoot Nazario.

Little testified that he had not seen who shot Nazario, consistent with his initial statement to police that he did not actually see the shooting, only heard the gunshots. N.T. 11/1/12 at 249–51. He had also told police that the shots came from the direction of Wilson and Williams (identifying them by their nicknames), but at trial insisted that he did not know anyone with those names. N.T. 11/1/12 at 243, 254, 267.

Colon also testified that she had not seen the shooter, contrary to her police statement in which she identified photos of Williams as the perpetrator and Wilson as the other man involved in the argument. N.T. 11/5/12 at 17, 22, 44, 140. Colon further testified that she was high on PCP and Xanax both at the time of the shooting and while being interviewed by detectives. N.T. 11/5/12 at 21, 60–67, 72. She alleged that detectives had pressured her into identifying Williams as the shooter. N.T. 11/5/12 at 22–23, 37–38, 50. Thus, although eyewitnesses testified to facts that placed Williams among a group at the scene of the shooting, only a single eyewitness, who recanted at trial, identified Williams as the likely shooter.

### C. Conviction, Sentencing, and Direct Appeal

After two and half days of deliberation, the second jury convicted Williams of first-degree murder and carrying a firearm on public streets in Philadelphia. The same day, the court sentenced Williams to a mandatory term of life in prison for first-degree murder, with no further penalty for the firearm charge.

Williams appealed, and the Pennsylvania Superior Court affirmed the judgment of sentence. Superior Court Opinion, 12/23/14, 1. The Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Williams*, 119 A.3d 351 (Pa. July 29, 2015) (table).

### D. Darnell Outlaw's Interviews with the FBI and PPD

While William's direct appeal was still pending, Darnell Outlaw spoke with FBI agents and Philadelphia Police Department (PPD) officers about Markeem Wilson. He spoke with the FBI first, on November 22, 2013. Exhibit A. In that proffer interview, he stated that he had reason to fear Wilson because Wilson had once killed someone—the victim in this case, Nathanial Nazario. Exhibit A at 2–3. According to Outlaw, Wilson had killed Nazario as retaliation for his involvement in a robbery of Wilson's house, during which the perpetrators held guns to the heads of Wilson's mother and other relatives. Exhibit A at 2–3. Outlaw described the shooting consistently with

5

the testimony presented at Williams's trial, but explained that Wilson told him that he, not Williams, was the person who had killed Nazario. Exhibit A at 3.

A few months later on February 7, 2014, while Williams's case remained pending on direct appeal, the PPD also interviewed Outlaw about Nazario's death. Exhibit B. Outlaw affirmed in that interview that Wilson had told him he was the person who had shot and killed Nazario. Exhibit B at 2–5. Respondents cannot find any evidence that the Commonwealth disclosed this PPD interview of Outlaw to Williams while his direct appeal was still pending.

### E. PCRA and Federal Habeas Proceedings

Williams filed a timely petition under Pennsylvania's Post-Conviction Relief Act. Appointed counsel, Gary S. Server, filed an amended petition, arguing that Williams was entitled to relief based on after-discovered evidence of Darnell Outlaw's November 22, 2013 FBI proffer interview, which had been discovered by a private investigator hired by the defense.[1]

---

[1] Because the Commonwealth had not disclosed that the PPD had conducted a similar interview, a *Brady* claim was not then available to Williams since the FBI is a separate government agency than the prosecution team in this state prosecution. *See, e.g., U.S. v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005) ("'*Kyles* cannot be read as imposing a duty on the prosecutor's office to learn

Amended PCRA Petition 3/10/17, 3–4. Williams requested an evidentiary hearing on this claim, Amended PCRA Petition 3/10/17, 2, but the PCRA court sent a notice of its intent to dismiss his petition as meritless without a hearing.

Before the petition was formally dismissed, Williams filed a premature, *pro se* notice of intent to appeal, which the Pennsylvania Superior Court quashed. In the meantime, Williams had also filed a request in the lower court to proceed *pro se*. The PCRA court allowed Williams to represent

---

of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.'") (*quoting U.S. v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003)). The only claim Williams could raise based upon the FBI interview, a state-law after-discovered evidence claim, has an outcome-determinative prejudice standard that is substantially higher than that required to satisfy *Brady* materiality. *See, e.g., Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (prejudice for after-discovered evidence claim is that by the "preponderance of the evidence," the new evidence "would likely result in a different verdict if a new trial were granted"); *compare Chinn v. Shoop*, 143 S.Ct. 28 (2022) (Jackson, J., dissenting from denial of certiorari) ("We have repeatedly said that the 'reasonable probability' standard is not the same as the 'more likely than not' or 'preponderance of the evidence' standard; it is a qualitatively lesser standard." (collecting cases)).

himself following a *Grazier*[2] hearing, permitted PCRA counsel to withdraw, and formally dismissed the petition. Williams did not appeal.

Over the next few years, Williams filed multiple writs of habeas corpus in the Philadelphia Court of Common Pleas, which were treated as PCRA petitions and dismissed as meritless. *See* 42 Pa.C.S. § 9542 ("The [PCRA] shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus…"); *see also Commonwealth v. Williams*, No. 1722 EDA 2021, 2022 WL 353660 (Pa. Super. Feb. 7, 2022).

### F. Federal Habeas Proceedings

On October 11, 2022, Williams filed a *pro se* habeas petition in federal court. ECF 1. Following review of the record, Respondents filed a motion requesting the appointment of federal habeas counsel after discovering and disclosing a copy of the PPD's February 7, 2014 interview of Darnell Outlaw in the case's full investigation file. ECF 13 ¶ 11; ECF 18 at 13.

---

[2] *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.").

Habeas counsel, Jonathan Feinberg, was appointed and filed an amended petition raising a single claim that the Commonwealth violated its obligations under *Brady* by not turning over the PPD interview with Outlaw while Williams's case was pending on direct appeal. ECF 18.

## DISCUSSION

After careful review of the record, Respondents conclude that Williams is entitled to a federal evidentiary hearing on his claim that Respondents failed to turn over a witness statement identifying someone else as the shooter. Respondents respectfully request that after the evidentiary hearing, they be permitted to respond to the substance of Williams's claim.

**I.     Williams is entitled to an evidentiary hearing on his claim that Respondents failed to turn over a witness statement identifying someone else as the shooter.**

Respondents concede that an evidentiary hearing is warranted on Petitioner's claim that Respondents violated *Brady* when it failed to turn over a witness statement identifying someone else as the shooter.[3] An evidentiary

---

[3] No *Brady* claim was raised before the state courts because the Commonwealth did not disclose the *Brady* material until after the conclusion of the state post-conviction proceedings. Thus, Williams's *Brady* claim is unexhausted, and he could raise this claim before the Pennsylvania Court of Common Pleas in a serial PCRA petition alleging governmental interference and/or newly discovered facts. *See* 42 Pa.C.S. § 9545(b)(1)(i) and (ii).

hearing is warranted when: (1) AEDPA's § 2254(e)(2) does not "bar[] an evidentiary hearing in the federal habeas proceeding;" and (2) when the petitioner "has proffered sufficient evidence to demonstrate that 'a new hearing would have the potential to advance the petitioner's claim.'" *Siehl v. Grace*, 561 F.3d 189 (3d Cir. 2009) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 286–87 (3d Cir. 2000)). Because Williams meets both requirements as to his claim, the Court should hold an evidentiary hearing.

**First**, AEDPA does not bar an evidentiary hearing. Section 2254(e)(2) places narrow limits on evidentiary hearings on habeas claims; these limits are triggered if the petitioner "'failed to develop' the factual basis of the

---

However, lack of exhaustion does not deprive a federal court of jurisdiction over a claim; rather, it is an affirmative defense for the government to raise, and consequently, one that it can waive. 28 U.S.C. § 2254(b)(3) (state may expressly waive exhaustion). In light of the government's ability to waive this defense, it is incumbent upon prosecutors to determine whether reliance on this procedural bar advances justice. *See Dennis v. Secretary, Pa. Dept. of Corrs.*, 834 F.3d 263, 290 (3d Cir. 2016) (en banc) (the prosecutor's "interest 'in a criminal prosecution is not that he shall win a case, but that justice shall be done.'") (internal alteration omitted) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Because Williams's failure to previously raise this *Brady* claim was due to the Commonwealth's failure to disclose the relevant *Brady* material until after the conclusion of his PCRA proceedings, Respondents do not assert and affirmatively waive any procedural bars that would otherwise bar consideration of the merits of Williams's *Brady* claim.

10

claim in State court proceedings.'" *Michael Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting § 2254(e)(2)). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432; *see also Shinn v. Ramirez*, 142 S.Ct. 1718, 1735 (2022) (holding that a petitioner "failed" under § 2254(e)(2) if the factual basis was not developed due to state post-conviction counsel's ineffectiveness). A finding of diligence turns on whether petitioner "made a reasonable attempt" to pursue his claim "in light of the information available at the time." *Williams*, 529 U.S. at 435. "Diligence will require in the usual case that the petitioner, at a minimum, seek an evidentiary hearing in state court in a manner prescribed by state law." *Id.* at 437.

However, when a hearing is not held by the state court, not due to the petitioner's lack of diligence, but because the Commonwealth failed to disclose relevant *Brady* material, § 2254(e)(2) does not apply. *See Eaddy v. Debalso*, Civil Action No. 19-0450, 2024 WL 776611 (E.D. Pa. Feb. 16, 2024) (holding that *Shinn* does not apply where a petitioner's failure to fully develop the factual basis of a claim is attributable to the Commonwealth for its failure to turn over *Brady* evidence); *see also Morris v. Beard*, 633 F.3d 185, 194–95 (when a petitioner requests a hearing in state court and is denied

11

one for a reason independent of his lack of diligence—in this case an inadequate state procedural ground—§ 2254(e)(2) does not bar an evidentiary hearing).

The recent case of *Eaddy v. Debalso* is instructive and on all fours with this case. *Eaddy*, 2024 WL 776611. In *Eaddy*, as in this case, the Commonwealth failed to disclose *Brady* material (in *Eaddy*, in the form of impeachment of Detective Dove, who took a key witness statement) that arose while the case was pending on direct appeal. *Id.* at *2 ("During the pendency of Mr. Eaddy's direct appeal, but unbeknownst to Mr. Eaddy, Detective Dove was fired from the Philadelphia Police Department for serious misconduct.").

In *Eaddy*, as in this case, Eaddy attempted to raise a claim in PCRA regarding facts that would be supported by full disclosure of the officer's misconduct, but the Commonwealth did not fully disclose the *Brady* material until after the conclusion of state post-conviction proceedings. *Id.* Eaddy requested a hearing during PCRA proceedings on his Detective Dove claim (that did not have the benefit of full *Brady* disclosure), but was denied. *Id.* Eaddy then filed a *pro se* habeas petition, and the federal defenders were appointed. *Id.* at *3. The Commonwealth, during habeas proceedings, for the first time, disclosed the full *Brady* material regarding Detective Dove's

12

misconduct. *Id.* at *3. Because, as in this case, the Commonwealth recognized that it was the Commonwealth's failure to fully disclose the *Brady* material during PCRA proceedings that led to Eaddy's inability to obtain an evidentiary hearing and fully develop his claim in state court, the Commonwealth agreed to waive exhaustion on the *Brady* claim and agreed to an evidentiary hearing in federal court. *Id.* at *17. Since the Commonwealth is empowered to waive its exhaustion defense, the Court accepted that waiver.[4] *Id.*

---

[4] Under AEDPA, exhaustion is an affirmative defense that a state may waive. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). The best reading of binding Supreme Court precedent is that it would be an abuse of discretion to reject an exhaustion waiver. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012). *Wood* emphasized that the courts' limited authority to overlook an inadvertent forfeiture of an AEDPA defense does not mean that "a federal court [has] *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Id.* at 472. And it squarely held that "[a] court is not at liberty…to bypass, override, or excuse a State's *deliberate* waiver of a limitations defense." *Id.* at 466 (emphasis added). Although *Woods* speaks to a statute-of-limitations defense rather than an exhaustion defense, its logic applies squarely to exhaustion. The Supreme Court previously concluded that it makes "'scant sense' to treat AEDPA's statute of limitations differently from other threshold constrains on federal habeas petitioners" such as exhaustion and procedural default. *Id.* at 472 (quoting *Day v. McDonough*, 547 U.S. 1998, 209 (2006)). This is because "AEDPA's statute of limitations, like the exhaustion doctrine,

The Court also granted an evidentiary hearing, finding that Eaddy was not at fault under § 2254(e)(2) for the lack of evidentiary development in state-court proceedings. *Id.* This was proper because "[t]hough the Commonwealth failed to disclose this *Brady* material" "Mr. Eaddy diligently tried to develop the factual record of his claim based on Detective Dove's misconduct" and "notwithstanding Mr. Eaddy's diligence, the facts surrounding Detective Dove's misconduct were not discovered until Mr. Eaddy's federal habeas proceedings because the Commonwealth withheld them until then." *Id.*

Williams's case could not be more on all fours. In both cases, *Brady* material arose during the pendency of direct review. In both cases, that *Brady* material was not disclosed to the petitioner until habeas proceedings. Both Eaddy and Williams attempted to raise an analogous claim in state court

---

'implicat[es] values beyond the concerns of the parties.'" *Id.* (quoting *Day*, 547 U.S. at 205). These concerns are "comity, finality, and the expeditious handling of habeas proceedings." *Day*, 547 U.S. at 208. The same balancing of those concerns applies when the state waives an exhaustion defense as it does when the state waives a statute-of-limitations defense. Thus, the same rule applies to a state's deliberate waiver: "[a] court is not at liberty…to bypass, override, or excuse a State's deliberate waiver" of an exhaustion defense. *Wood*, 566 U.S. at 466. Therefore, since Respondents have expressly waived exhaustion in this case after careful review, Respondents' waiver should be accepted by this Court.

and requested a hearing, but were denied one while the Commonwealth continued to fail to disclose potential *Brady* material. The *Brady* material in both cases was disclosed during habeas proceedings, and based upon the Commonwealth's previous failures to disclose, the Commonwealth agreed to waive exhaustion of the claim. Based on all of that, the Court in *Eaddy* permitted an evidentiary hearing, as was proper under § 2254(e)(2). *Id.* at *17. Therefore, as in *Eaddy*, this Court should permit Williams to develop his claim at an evidentiary hearing.

**Second**, Williams has proffered sufficient evidence to demonstrate that a new hearing would have the potential to advance his claim. *Siehl*, 561 F.3d at 197. Outlaw's statement to the PPD alleges that Markeem Wilson had told him during William's trial that he, *not* Williams, had killed Nazario in retaliation for Nazario's role in a robbery of Wilson's mother's house. Exhibit B at 3–4. If Outlaw were to testify credibly to those facts at an evidentiary hearing, his testimony would support William's argument that Respondents, via the PPD, possessed potentially material exculpatory evidence that they did not turn over, prejudicing him. Without a hearing, the Commonwealth cannot assess the importance of Outlaw's potential testimony or any other evidence in support of the claim that Williams can marshal. While the PPD interview seems to have been withheld and is facially

15

favorable, without hearing from the witness and allowing the Court to assess his credibility, the materiality prong of *Brady* cannot be assessed. *See Kyles v. Whitley*, 514 U.S. 419 (1995) (three prongs of *Brady* are suppression, favorability, and materiality). Thus, Respondents, at this juncture, do not agree that Williams is entitled to relief. However, the open questions in this case underscore the importance of a hearing.

## Conclusion

For the foregoing reasons, Respondents agree that Williams is entitled to an evidentiary hearing. Respondents respectfully request that, after the hearing, they be permitted to respond to the substance of Williams's claim.

Respectfully submitted,

*/s/ Mackenzie D. Hayes*
Mackenzie D. Hayes, Esq.
Assistant District Attorney
Federal Litigation Unit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WILLIAMS, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| R. IRWIN, et al., : | | NO. 22-4140 |
| | : | |
| Respondents. | | |

CERTIFICATE OF SERVICE

I hereby certify that the foregoing response was served on April 5, 2024, on all counsel of record *via* this Court's CM/ECF electronic filing system.

/s/ *Mackenzie D. Hayes*
Mackenzie D. Hayes, Esq.
Assistant District Attorney
Federal Litigation Unit